**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BANK OF AMERICA, | ) |
| | ) Case No.: 2:16-cv-00591-GMN-GWF |
| Plaintiff, | ) |
| vs. | ) **ORDER** |
| | ) |
| ALIANTE MASTER ASSOCIATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |

Pending before the Court is Plaintiff Bank of America, N.A.'s ("BANA's") Second Motion for Partial Summary Judgment, (ECF No. 77). Defendants Aliante Master Association ("HOA") and SFR Investments Pool 1, LLC ("SFR") filed Responses, (ECF Nos. 80, 82), and BANA filed a Reply, (ECF No. 87).

Also pending before the Court are the Motions for Summary Judgment, (ECF Nos. 78, 79), filed by SFR and HOA. BANA filed a Response, (ECF No. 81), and SFR and HOA filed Replies, (ECF Nos. 88, 89).

For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** BANA's Second Motion for Partial Summary Judgment, (ECF No. 77); **GRANTS in part** and **DENIES in part** SFR's Motion for Summary Judgment, (ECF No. 79); and **DENIES** HOA's Motion for Summary Judgment, (ECF No. 78).

I. **BACKGROUND**

This case arises from the non-judicial foreclosure on real property located at 6716 Sea Swallow Street, North Las Vegas, Nevada 89084 (the "Property"). (*See* Deed of Trust, Ex. A to BANA's Mot. Summ. J. ("MSJ"), ECF No. 77-1). In 2007, Mary L. Slabon ("Borrower") purchased the Property by way of a loan in the amount of $328,000.00, secured by a deed of

trust (the "DOT"). (*Id.*). BANA was the lender for Borrower's loan, and BANA recorded its interest in the DOT on February 1, 2007. (*See id.*).

Upon Borrower's failure to stay current on her payment obligations, Nevada Association Services ("NAS"), on behalf of HOA, initiated foreclosure proceedings by recording a notice of delinquent assessment lien and a subsequent notice of default and election to sell. (*See* Notice of Delinquent Assessment Lien, Ex. B to BANA's MSJ, ECF No. 77-2); (Notice of Default, Ex. C to BANA's MSJ, ECF No. 77-3).

On April 7, 2014, the law firm Miles, Bauer, Bergstrom & Winters LLP ("Miles Bauer"), on behalf of BANA, sent a letter to NAS requesting a ledger identifying the amount of HOA's superpriority lien. (*See* Request for Accounting at 6–9, Ex. 1 to Miles Aff., ECF No. 77-4). NAS responded with a ledger detailing the amount of HOA's lien. (*See* Statement of Account, Ex. 2 to Miles Aff., ECF No. 77-4). Based upon the monthly assessments identified in the ledger, BANA calculated what it determined to be HOA's superpriority lien, and delivered a check to NAS for $421.74. (*See* Tender Letter, Ex. 3 to Miles Aff., ECF No. 77-4).

Notwithstanding the alleged tender, NAS proceeded with the foreclosure by recording a notice of foreclosure sale and subsequently foreclosing on the Property. (*See* Notice of Sale, Ex. E to BANA's MSJ, ECF No. 77-5). On May 9, 2014, SFR recorded a foreclosure deed, stating that it purchased the Property for $26,000. (Foreclosure Deed, Ex. F to BANA's MSJ, ECF No. 77-6).

BANA filed the instant Complaint on March 17, 2016, asserting the following causes of action arising from the foreclosure and subsequent sale of the Property: (1) quiet title; (2) breach of NRS 116.1113; (3) wrongful foreclosure; and (4) injunctive relief. (*See* Compl. ¶¶ 29–71). On May 14, 2016, SFR filed crossclaims and counterclaims against BANA and Borrower, respectively, for quiet title and injunctive relief. (*See* Answer 12:17–13:25, ECF No. 18).

## II. **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the

court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth; it is to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

### III. DISCUSSION

BANA moves for summary judgment on its quiet title and declaratory relief claims, asserting that *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 2296, 198 L.Ed.2d 726 (2017), compels the Court to hold that the HOA foreclosure sale did not extinguish BANA' DOT. (BANA's MSJ 8:27–9:12, ECF No. 77). BANA alternatively argues that summary judgment is warranted because BANA properly

tendered the superpriority HOA lien prior to the foreclosure sale, thus eliminating the lien's superpriority status. (*Id.* 5:3–8:18).

SFR and HOA oppose BANA's Motion on the following grounds: *Bourne Valley* is not controlling authority; BANA lacks standing to assert its quiet title claim; BANA did not validly tender the superpriority amount prior to foreclosure; and BANA is otherwise not entitled to an equitable remedy. (SFR's Resp. 4:14–18:2, ECF No. 82); (HOA's Resp. 5:13–9:13, ECF No. 80).

SFR seeks summary judgment in its favor on the basis that its purchase of the Property extinguished all junior liens, and alternatively, its status as a bona fide purchaser for value safeguards its title to the Property. (SFR's MSJ. 17:9–26:14, ECF No. 79). Similarly, HOA requests summary judgment, arguing the foreclosure sale was not "wrongful" under Nevada law or principles of equity, and that BANA received constitutionally sufficient notice of the foreclosure, resulting in the sale's extinguishment of BANA's DOT. (HOA's MSJ 5:13–12:27, ECF No. 78).

The Court's discussion below first addresses the constitutionality of NRS Chapter 116, followed by BANA's standing to bring this quiet title action.

### A. Constitutionality of the Foreclosure

In *Bourne Valley*, the Ninth Circuit held that NRS 116.3116's notice provisions violated lenders' due process rights because the scheme "shifted the burden of ensuring adequate notice from the foreclosing homeowners' association to a mortgage lender." *Bourne Valley*, 832 F.3d at 1159. The Ninth Circuit, interpreting Nevada law, declined to embrace the appellant's argument that NRS 107.090, read into NRS 116.31168(1), mandates that HOAs provide notice to lenders even absent a request. *Id.* Accordingly, the absence of mandatory notice provisions rendered the statutory scheme facially unconstitutional. *Id.* at 1158–60.

*Bourne Valley*'s construction of Nevada law is "only binding in the absence of any subsequent indication from the [Nevada] courts that [the Ninth Circuit's] interpretation was incorrect." *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983). "[W]here the reasoning or theory of . . . prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, [a court] should consider itself bound by the later controlling authority. . . ." *Miller v. Gammie*, 335 F.3d 889, 892–893 (9th Cir. 2003). "[A][s]tate's highest court is the final judicial arbiter of the meaning of state statutes." *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006) (citing *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975)); *see also Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir. 1982) ("State courts have the final authority to interpret, and, where they see fit, to reinterpret the states' legislation.").

In *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, the Nevada Supreme Court expressly declined to follow *Bourne Valley* and held that NRS 107.090 is incorporated into NRS 116.31168, thus requiring that HOAs "provide foreclosure notices to all holders of subordinate interests, even when such persons or entities did not request notice." 422 P.3d 1248, 1253 (Nev. 2018) (en banc). The Nevada Supreme Court's holding is clearly irreconcilable with the Ninth Circuit's finding of unconstitutionality because the Ninth Circuit premised its conclusion on NRS Chapter 116's lack of mandatory notice provisions. Because the Nevada Supreme Court has since interpreted NRS Chapter 116 as mandating notice, the rationale underlying the *Bourne Valley* decision no longer finds support under Nevada law. *See Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (recognizing that cases are "clearly irreconcilable" where the "relevant court of last resort ... undercut[s] the theory or reasoning underlying the prior circuit precedent."); *see e.g*, *Toghill v. Clarke*, 877 F.3d 547, 556–60 (4th Cir. 2017). Because the Nevada Supreme Court has final say on the meaning of Nevada statutes, *Bourne Valley* is no longer controlling authority with respect to

NRS 116.3116's notice provisions and, consequently, its finding of facial unconstitutionality. Accordingly, to the extent BANA, in the instant Motion, seeks to prevail based upon *Bourne Valley*, the Court rejects this theory.

### B. BANA's Standing to Enforce the DOT

SFR contends that BANA lacks standing to enforce the DOT because it cannot prove that BANA held both the Note *and* the DOT. (SFR's Resp. 4:7–20, ECF No. 82). According to SFR, BANA cannot bring its quiet title claim without demonstrating that it possesses both instruments. (*Id.* 6:2–15).

To the extent SFR argues that BANA lacks standing to enforce the DOT because it has not produced evidence that the promissory note was endorsed in BANA's favor, the Court disagrees. (*See* Resp. 4:14–6:14, ECF No. 82) (citing *Edelstein v. Bank of New York Mellon*, 286 P.3d 249 (Nev. 2012)). SFR's reliance on *Edelstein*, which dealt with authority to foreclose, is misplaced. *See* 286 P.3d at 255. Rather than seeking authority to foreclose on the Property, BANA seeks to quiet title in its favor. (Compl. ¶¶ 29–50). An action to quiet title "may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013). Indeed, BANA seeks to determine the viability of its interest against SFR through the DOT alone. (Resp. 12:21–22, ECF No. 85). Similarly, BANA provides documentation showing a seamless chain of title as to its interest in the DOT. (Deed of Trust, Ex. A. to BANA's MSJ, ECF No. 77); (Interrogatories 10:3–17, Ex. R to BANA's Reply, ECF No. 87-1) (showing BANA's explanation that it is "the current holder of the subject promissory note" and "is the original lender and current beneficiary of the [DOT]").

Because SFR does not produce evidence to rebut BANA's status with the DOT, there is no dispute of material fact about BANA's interest here. BANA thus provided proper

documentation, and has standing to pursue its quiet title claim. *See USROF IV Legal Title 2015-1 by U.S. Bank Nat'l Ass'n v. White Lake Ranch Ass'n*, No. 3:15-cv-00477-MMD-CBC, 2019 WL 539037, at *3 (D. Nev. Feb. 11, 2019) ("[T]he Court finds that as the holder of the DOT . . . [the holder] has standing to challenge the HOA Sale and to contend that the DOT has not been extinguished.").

### C. Tender of the Superpriority Portion of HOA's Lien

BANA argues that its payment of nine-months' worth of HOA common assessments constituted a valid and unconditional tender, thus extinguishing HOA's superpriority lien. (BANA's MSJ 5:2–8:8, ECF No. 77). SFR counters that the Court must disregard BANA's evidence of tender because such evidence is inadmissible under the Federal Rules of Evidence and improper under the Federal Rules of Civil Procedure. (SFR's Resp. 7:25–11:14). Specifically, SFR seeks exclusion of BANA's exhibits demonstrating tender on the grounds that the exhibits are inadmissible, and the Miles Bauer employee purporting to authenticate them, Adam Kendis, was never disclosed as a witness in this case. (*Id.*).

#### 1. Admissibility of the Kendis Affidavit

SFR challenges the admissibility of the Kendis Affidavit on the grounds of hearsay, authentication, and personal knowledge. (SFR's Resp. 7:25–11:14). Specifically, SFR lodges the following attacks against the Kendis Affidavit: the attached exhibits originate from NAS rather than Kendis's employer, Miles Bauer; Kendis is without personal knowledge of the factual details in the exhibits; and Kendis fails to meet the heightened standard governing authentication of computerized screenshots. (*Id.*).

Under Federal Rule of Evidence 901(a), "[t]he foundational 'requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000) (quoting Fed. R. Evid. 901(a) ). "[A] proper

foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002). Rule 902(11) provides that "a domestic record that meets the requirements of Rule 803(6)(A)–(C)" is deemed to be self-authenticating. Fed. R. Civ. P. 902(11). In turn, Rule 803(6) provides that business records are admissible when two foundational facts are shown: "(1) the writing is made or transmitted by a person with knowledge at or near the time of the incident recorded, and (2) the record is kept in the course of regularly conducted business activity." *Sea-Land Serv., Inc. v. Lozen Int'l, LLC.*, 285 F.3d 808, 819 (9th Cir. 2002) (quoting *United States v. Miller*, 771 F.2d 1219, 1237 (9th Cir. 1985) ); *see also* Fed. R. Evid. 803(6).

Here, Kendis has sufficiently authenticated the records attached to his affidavit. Kendis states that he is an employee of BANA's retained counsel, Miles Bauer, and that he has personally cross-referenced the information in the affidavit and exhibits with Miles Bauer's records to confirm the accuracy of the documents. (*See* Kendis Aff. ¶ 3, Ex. D to BANA's MSJ, ECF No. 77-4). Kendis states he is familiar with Miles Bauers' record-keeping policies and that his job responsibilities require him to maintain records in connection with the tender payments to HOA in this case. (*Id.* ¶¶ 3–8). Additionally, each attached exhibit is accounted for and sworn to by Kendis in the Affidavit. This is sufficient for a reasonable juror to find that the evidence attached to the Kendis Affidavit is what Kendis claims it to be.

SFR further argues that Kendis is without personal knowledge to authenticate Miles Bauers' computerized records as well as any documents originating elsewhere, such as NAS's business files. The Court rejects these contentions as they are out of step with the Ninth Circuit's relatively lax requirements for admitting evidence under FRE 803(6). *See, e.g.*, *ABS Entm't, Inc. v. CBS Corp.*, 908 F.3d 405 (9th Cir. 2018) ("The business records exception only requires 'someone with knowledge' about the record-keeping, not necessarily an employee of

the business or someone with knowledge of how the reports were made or maintained."); *In re Hudson*, 504 B.R. 569, 575 (B.A.P. 9th Cir. 2014) ("[S]ubsection (6) of FRE 803 does not require the business custodian to certify he or she has first-hand knowledge of the facts set forth in the records being authenticated."); *Curley v. Wells Fargo & Co.*, 120 F. Supp. 3d 992, 998 (N.D. Cal. 2015). Under this standard, "it is immaterial that the business record is maintained in a computer rather than in company books." *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1043 (9th Cir. 2009) (affirming district court's admission of payment history summaries maintained in electronic format and compiled in the regular course of business.").

In short, SFR advocates for an admissibility standard that is not in accord with recent controlling authority. Kendis meets the standard of a "qualified witness" under Rule 803(6) and has sufficiently authenticated the exhibits attached to his affidavit.

### 2. Failure to Disclose a Witness

SFR asserts the Court should disregard BANA's evidence of tender because the affiant attesting to this evidence, Adam Kendis, was never identified as a witness in BANA's initial disclosures. (SFR's Resp. 7:2–23, ECF No. 82). SFR states that admission of Kendis's affidavit would prejudice SFR's ability to defends its position as to BANA's arguments concerning the purported tender. (*Id.*).

Federal Rule of Civil Procedure 26(a)(1) governs initial disclosures. *See* Fed. R. Civ. P. 26(a). Rule 26(a)(1)(A)(i) requires parties to disclose the name of "each individual . . . that the disclosing party may use to support its claims or defenses" at the outset of a civil suit. Similarly, Rule 26(a)(1)(A)(ii) requires parties to disclose "a copy . . . of all documents . . . that the disclosing party . . . may use to support its claims or defenses." "Rule 37 'gives teeth' to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th

Cir. 2001)); Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) is a "self-executing," "automatic" sanction designed to provide a strong inducement for disclosure. *Yeti by Molly, Ltd.*, 259 F.3d at 1106 (quoting Fed. R. Civ. P. 37 advisory committee's note (1993)). "The only exceptions to Rule 37(c)(1)'s exclusion sanction apply if the failure to disclose is substantially justified or harmless." *Goodman*, 644 F.3d at 827; Fed. R. Civ. P. 37(c)(1).

To the extent BANA violated Rule 26 by failing to disclose Kendis's name, the Court finds the omission harmless. Notwithstanding BANA's failure to identify Kendis by name, BANA's disclosures put SFR on notice that a corporate representative of Miles Bauer would testify to BANA's alleged tender of the superpriority amount. (*See* BANA's Initial Disclosures, Ex. S to BANA's Reply, ECF No. 87-2). Additionally, BANA's disclosures expressly identified "Correspondence" between Miles Bauer and HOA regarding tender as a document on which BANA intends to rely. (*Id.*). Even before the parties exchanged initial disclosures, BANA's Complaint alerted SFR of its theory of this case by repeatedly alleging that HOA, through NAS, rejected BANA's tender. (*See* Compl. ¶¶ 26–27, 44–45, 54–55). Finally, prior to this case being administratively stayed, (ECF No. 43), BANA attached the same Miles Bauer Affidavit along with Kendis's declaration to its initial summary-judgment motion. (*See* Affidavit, Ex. E to BANA's Initial MSJ, ECF No. 40-5). Over a year later, once the Court lifted the stay, (ECF No. 64), the parties submitted a new proposed scheduling order and underwent additional discovery. (*See, e.g.*, Scheduling Order, ECF No. 66).

In short, SFR knew of BANA's substantive legal theory at the outset of this case, and SFR has not been prejudiced by BANA's evidence establishing the same. Moreover, because the Court's stay of this action resulted in SFR having access to the Miles Bauer Affidavit over a year before reentering discovery, SFR had ample opportunity to defend against this evidence. Accordingly, given the case's unique procedural history, any prejudice SFR suffered by

BANA's failure to disclose Kendis as a witness has been nullified. The Court will thus consider the Kendis Affidavit.

The Court now turns to whether there is any genuine issue of material fact that BANA tendered the HOA superpriority amount prior to the Property's foreclosure.

### 3. BANA's Tender of the Superpriority Lien Amount

BANA asserts that its payment of nine-months of HOA common assessments constituted a valid and unconditional tender, such that it extinguished the HOA's superpriority lien. (BANA's MSJ 5:3–8:18, ECF No. 77). SFR counters that BANA's tender was invalid because the letter accompanying the payment contained impermissible conditions and misrepresented what constituted HOA's superpriority amount. (SFR's Resp. 11:21–18:2).

Under NRS 116.3116, the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 414 (Nev. 2014). "[A] first deed of trust holder's unconditional tender of the superpriority amount due results in the buyer at foreclosure taking the property subject to the deed of trust." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 116 (Nev. 2018) (en banc). "[T]he superpriority portion of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of unpaid assessments." *Id.* at 117. In addition to a full tender of the superpriority amount, "valid tender must be unconditional, or with conditions on which the tendering party has a right to insist." *Id.*

Here, the evidence indicates that on May 1, 2014, Miles Bauer, on behalf of BANA, sent NAS a letter accompanied by a check for $421.74 ,which NAS confirmed receiving. (*See* Tender Letter, Ex. 3 to Kendis Aff., ECF No. 77-4); (NAS's Confirmation of Receipt, Ex. 4 to Kendis Aff., ECF No. 77-4); (Screenshot of Case Management Note, Ex. 6 to Kendis Aff., ECF No. 77-4). Pursuant to NAS's ledger identifying Borrower's delinquent payments, BANA calculated nine months of assessments at a rate of $46.86 per month. (*See* Borrower Account

History Report, Ex. 2 to Kendis Aff., ECF No. 77-4). Further, NAS's ledger does not reveal nuisance and abatement charges. (*See id.*). Thus, BANA's tender of the $421.74 check to NAS undisputedly accounted for the value of HOA's superpriority lien. (*See* Tender Letter, Ex. 3 to Kendis Aff.).

SFR and HOA, in turn, have failed to produce competing evidence showing that BANA miscalculated the superpriority lien amount, the lien included nuisance and abatement charges, or that BANA never delivered the tender letter and accompanying check. The remaining question, therefore, is whether BANA's tender was either unconditional or with conditions on which BANA had the right to insist.

BANA's Tender Letter, in relevant part, contains the following language:

> [O]ur client has authorized us to make payment to you in the amount of $421.74 to satisfy its Super-Priority obligations to the HOA as a holder of the first deed of trust against the property. Thus, enclosed you will find a cashier's check made out to NEVADA ASSOCIATION SERVICES in the sum of $421.74, which represents the maximum 9 months worth of delinquent assessments recoverable by an HOA against the first deed of trust lienholder. This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that BANA's financial obligations towards the HOA in regards to the real property located at 6716 Sea Swallow Street have now been "paid in full."

(Tender Letter, Ex. 3 to Kendis Aff., ECF No. 77-4).

SFR argues that the tender letter is invalid because it is impermissibly conditional. (*See* SFR's Resp. 12:4–18). SFR asserts that acceptance of the check was improperly contingent upon agreement with the facts as stated in the letter, including BANA's legal interpretation that the check's amount represented payment in full. (*Id.* 16:5–17:16).

At the outset, the Court notes that one of the purportedly improper paragraphs in the tender letter is identical to the letter the Nevada Supreme Court deemed unconditional and

otherwise valid.[1] Therefore, to the extent SFR assigns impropriety to language in that paragraph, the argument necessarily fails. Specifically, with respect to the provision that an endorsement would be construed as acceptance of the letter's facts, the Court incorporates the reasoning of the Nevada Supreme Court and finds this language constitutes a condition on which BANA had the right to insist. *Bank of Am., NA.*, 427 P.3d at 117.

SFR argues, however, that because the letter omits any reference to abatement charges and expressly notes that the check applies solely to nine months of HOA assessments, acceptance of the tender would force HOA to waive a portion of its superpriority lien. (SFR's Resp. 15:9–17:17). In this case, because there is no genuine dispute that maintenance and abatement charges were not incurred during the relevant time period, acceptance of the letter's facts in this regard would not force the association to waive a portion of its superpriority lien as SFR urges. Moreover, SFR does not provide evidence of abatement charges owed during the delinquency process in this matter.

Finally, the Court rejects SFR's argument that the tender letter improperly purports to absolve BANA of any future liability it may have to HOA. The Court is in accord with the Nevada Supreme Court that the letter's reference to "facts stated herein," immediately preceding the language about BANA's obligations being "paid in full," can only be reasonably interpreted as applying to the underlying foreclosure proceeding. *Sage Realty LLC Series 2 v. Bank of New York Mellon*, No. 73735, 2018 WL 6617730, at *1 (Nev. Dec. 11, 2018) (unpublished) ("The letter refers to 'the facts stated herein,' which can only be reasonably

---

[1] The tender letter before the Nevada Supreme Court contained the following paragraph:

> This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [Bank of America]'s financial obligations towards the HOA in regards to the [property] have now been "paid in full."

*Bank of Am., NA.*, 427 P.3d at 118.

construed as contemplating the underlying foreclosure proceeding and not a future scenario in which BNYM might again need to cure a default as to the superpriority portion of the HOA's lien to protect its first deed of trust."); *Deutsche Bank Nat'l Tr. Co. v. Premier One Holdings, Inc.*, 431 P.3d 55 (Nev. 2018) (unpublished) (same); *Fiducial, LLC v. Bank of New York Mellon Corp.*, No. 71864, 2018 WL 6617727, at *2 (Nev. Dec. 11, 2018) (same).

### 4. SFR's Status as a Bona Fide Purchaser

Because BANA satisfied the HOA superpriority lien, SFR cannot prevail even if the Court were to find it was a bona fide purchaser for value. "A foreclosure sale on a mortgage lien after valid tender satisfies that lien is void, as the lien is no longer in default." *See Bank of Am., N.A. v. SFR Invs. Pool 1*, LLC, 427 P.3d 113, 121 (Nev. 2018) ("Because a trustee has no power to convey an interest in land securing a note or other obligation that is not in default, a purchaser at a foreclosure sale of that lien does not acquire title to that property interest."). Accordingly, in light of BANA's tender, SFR's status as a bona fide purchaser is immaterial.

Based upon the foregoing, BANA's tender satisfied HOA's superpriority lien and thus invalidated the ensuing sale to the extent it extinguished BANA's DOT. While the sale remains intact, BANA's DOT continues to encumber the Property and SFR's interest is subject to this encumbrance. Accordingly, BANA's Motion for Summary Judgment, as to its quiet title claim, is granted. The Court denies SFR's Motion with respect to its quiet title claim against BANA.

### D. SFR's Quiet Title Claim Against Borrowers

SFR seeks summary judgment on its quiet title claim against Borrower on the basis that "it obtained title of the unit's owner without equity or right of redemption" by purchasing the Property. (SFR's MSJ 25:7–12, ECF No. 70). Because the Court holds that the sale remains intact, and given SFR's evidence of its interest in the Property relative to that of Borrower, SFR's Motion against Borrower is granted to the extent Borrowers assert any adverse interest

in the Property. *See Bank of Am., N.A. v. Falcon Point Ass'n*, No. 216-cv-00814-GMN-CWH, 2018 WL 4682317, at *8 (D. Nev. Sept. 28, 2018); *Deutsche Bank Nat'l Tr. Co. v. Foothills at S. Highlands Homeowners Ass'n*, No. 2:16-cv-00245-GMN-PAL, 2018 WL 3613984, at *5 (D. Nev. July 27, 2018).[2]

### E. BANA's Wrongful Foreclosure and Injunctive Relief Claims

In its prayer for relief, BANA requests primarily an order declaring that "SFR purchased the property subject to [BANA's] senior deed of trust." (*See* Compl. 12:14–13:10, ECF No. 1). The other relief requested—with the exception of injunctive relief—is phrased in the alternative. (*See id.*). Therefore, because the Court grants summary judgment for BANA on its quiet title claim, BANA receives the relief it requested. The Court accordingly dismisses BANA's wrongful foreclosure claim as moot. As to BANA's request for a preliminary injunction pending a determination by the Court concerning the parties' respective rights and interests, the Court's grant of summary judgment for BANA moots this claim and is therefore dismissed.

///
///
///
///
///
///
///
///

---

[2] As Borrower has not appeared in this action, SFR moved for clerk's entry of default, (ECF No. 75), which the clerk of court subsequently entered, (ECF No. 76).

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that BANA's Second Motion for Partial Summary Judgment, (ECF No. 77), is **GRANTED** consistent with the foregoing.

**IT IS FURTHER ORDERED** that SFR's Motion for Summary Judgment, (ECF No. 79), is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that HOA's Motion for Summary Judgment, (ECF No. 78), is **DENIED**.

The Clerk of Court shall enter judgment accordingly and close the case.

**DATED** this  31   day of March, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court